## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **DANA HARMON, Individually and For Others Similarly Situated,** <br> **Plaintiff,** <br><br> v. <br><br> **XTO ENERGY, INC.,** <br> **Defendant.** | Case No. _____ <br><br> **JURY TRIAL DEMANDED** <br><br> **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COMPLAINT

### SUMMARY

1. Plaintiff Dana Harmon (Harmon) brings this lawsuit to recover unpaid overtime wages and other damages from XTO Energy, Inc. (XTO) under the Fair Labor Standards Act (FLSA).

2. Harmon worked for XTO as a Construction Manager.

3. Harmon and the Day Rate Construction Managers (as defined below) regularly worked for XTO in excess of forty (40) hours each week.

4. But XTO did not pay them overtime.

5. Instead of paying overtime as required by the FLSA, XTO improperly paid Harmon and the Day Rate Construction Managers a daily rate with no overtime compensation.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District.

9. XTO is headquartered in Harris County, Texas.

10. Harmon worked for XTO in Midland County, Texas.

### THE PARTIES

11. Harmon worked for XTO from approximately July 2018 until November 2019 as a Construction Manager.

12. Throughout his employment, XTO paid Harmon a flat daily rate for each day worked regardless of the total hours worked in a workweek ("day rate pay plan").

13. Harmon's consent to be a party plaintiff is attached as Exhibit A.

14. Harmon brings this action on behalf of himself and all other similarly situated workers who were paid by XTO's day-rate system. XTO paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in violation of the FLSA.

15. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All current and former construction managers who worked for or on behalf of XTO Energy, Inc. and who were paid according to its day rate pay plan in the past three (3) years (the "Day Rate Construction Managers").**

16. The identities of the Day Rate Construction Managers can be readily ascertained from XTO's records.

17. XTO Energy, Inc. is a corporation doing business throughout the United States. XTO may be served by serving its registered agent for service of process: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

**COVERAGE UNDER THE FLSA**

18. At all times hereinafter mentioned, XTO was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19. At all times hereinafter mentioned, XTO was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20. At all relevant times, XTO has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

21. At all relevant times, XTO has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

22. In each of the past 3 years, XTO's annual gross volume of sales has well exceeded $1,000,000 for at least the past 3 years.

23. At all relevant times, Harmon and the Day Rate Construction Managers were engaged in commerce or in the production of goods for commerce.

24. XTO uniformly applied its policy of paying its Construction Managers, including Harmon, a day rate with no overtime compensation.

25. XTO applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

26. By paying its Construction Managers a day rate with no overtime compensation, XTO violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

27. As a result of this policy, XTO and the Day Rate Construction Managers do not receive overtime as required by the FLSA.

28. XTO's uniform compensation scheme of paying its Construction Managers a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

29. XTO is an international natural gas and oil producer operating throughout five divisions in the United States, Western Canada, and South America.

30. To complete its business objectives, it hires personnel (like Harmon) to perform construction work.

31. Many of these individuals worked for XTO on a day rate basis (without overtime pay).

32. These workers make up the proposed collective of Day Rate Construction Managers.

33. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

34. Throughout his employment with XTO, XTO paid him on a day rate basis.

35. Harmon and the Day Rate Construction Managers work for XTO under its day rate pay scheme.

36. Harmon and the Day Rate Construction Managers do not receive a salary.

37. If Harmon and the Day Rate Construction Managers did not work, they did not get paid.

38. Harmon and the Day Rate Construction Managers receive a day rate.

39. Harmon and the Day Rate Construction Managers do not receive overtime pay.

40. This is despite the fact Harmon and the Day Rate Construction Managers often worked 10 or more hours a day, for 7 days a week, for weeks at a time.

41. For example, Harmon received a day rate for each day he worked for XTO.

42. Although he typically worked 7 days a week, for 10 or more hours a day, he did not receive any overtime pay.

43. Harmon and the Day Rate Construction Managers received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

44. Harmon and the Day Rate Construction Managers are not employed on a salary basis.

45. Harmon and the Day Rate Construction Managers do not, and never have, received guaranteed weekly compensation from XTO irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

46. Harmon and the Day Rate Construction Managers work in accordance with the schedule set by XTO and/or its clients.

47. Harmon's work schedule is typical of the Day Rate Construction Managers.

48. XTO controls Harmon and the Day Rate Construction Managers' pay.

49. Likewise, XTO and/or its clients control Harmon and the Day Rate Construction Managers' work.

50. XTO requires Harmon and the Day Rate Construction Managers to follow XTO and/or its clients' policies and procedures.

51. Harmon and the Day Rate Construction Managers' work must adhere to the quality standards put in place by XTO and/or its clients.

52. Harmon and the Day Rate Construction Managers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

53. As a Construction Manager, Harmon was responsible for ensuring XTO's and/or its clients' projects were completed according to established guidelines, specifications, and restrictions.

54. All XTO's Day Rate Construction Managers perform similar duties, observing construction, ensuring work is done according to established guidelines, specifications, and restrictions.

55. Harmon and the Day Rate Construction Managers provide daily reports to XTO (and/or its clients') personnel.

56. At all relevant times, XTO and/or its clients maintained control over Harmon and the Day Rate Construction Managers via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

57. Harmon and the Day Rate Construction Managers do not have the power to hire or fire any employees.

58. Harmon's working relationship with XTO is similar XTO's relationship with its other Day Rate Construction Managers.

59. XTO knew Harmon and the Day Rate Construction Managers worked more than 40 hours in a week.

60. XTO knew, or showed reckless disregard for, whether the Day Rate Construction Managers were entitled to overtime under the FLSA.

61. Nonetheless, XTO failed to pay Harmon and the Day Rate Construction Managers overtime.

62. XTO willfully violated the FLSA.

## CAUSES OF ACTION
## FLSA VIOLATIONS

63. By failing to pay Harmon and those similarly situated to him overtime at one-and-one-half times their regular rates, XTO violated the FLSA's overtime provisions.

6

64. XTO owes Harmon and those similarly situated to him the difference between the rate actually paid and the proper overtime rate.

65. Because XTO knew, or showed reckless disregard for whether, its pay practices violated the FLSA, XTO owes these wages for at least the past three years.

66. XTO is liable to Harmon and those similarly situated to him for an amount equal to all unpaid overtime wages as liquidated damages.

67. Harmon and those similarly situated to him are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COLLECTIVE ACTION ALLEGATIONS

68. Harmon incorporates all previous paragraphs and alleges that the illegal pay practices XTO imposed on Harmon were likewise imposed on the Putative Class Members.

69. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

70. Numerous other individuals who worked with Harmon indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

71. Based on his experiences and tenure with XTO, Harmon is aware that XTO's illegal practices were imposed on the Day Rate Construction Managers.

72. The Day Rate Construction Managers were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

73. XTO's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Construction Managers.

74. Harmon's experiences are therefore typical of the experiences of the Day Rate Construction Managers.

75. The specific job titles or precise job locations of the Day Rate Construction Managers do not prevent class or collective treatment.

76. Harmon has no interests contrary to, or in conflict with, the Day Rate Construction Managers. Like each Day Rate Construction Manager, Harmon has an interest in obtaining the unpaid overtime wages owed to him under federal law.

77. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

78. Absent this action, many Day Rate Construction Managers likely will not obtain redress of their injuries and XTO will reap the unjust benefits of violating the FLSA and applicable state labor laws.

79. Furthermore, even if some of the Day Rate Construction Managers could afford individual litigation against XTO, it would be unduly burdensome to the judicial system.

80. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

81. The questions of law and fact common to the Day Rate Construction Managers predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether the Day Rate Construction Managers' rights were violated as a result of XTO's day rate pay plan;

    b. Whether XTO's day rate pay plan was made in good faith;

    c. Whether XTO's decision to not pay time and a half for overtime to the Day Rate Construction Managers was made in good faith;

    d.    Whether XTO's violation of the FLSA was willful; and

    e.    Whether XTO's illegal pay practices were applied uniformly across the nation to all Day Rate Construction Managers.

82. Harmon's claims are typical of the claims of the Day Rate Construction Managers. Harmon and the Day Rate Construction Managers sustained damages arising out of XTO's illegal and uniform employment policy.

83. Harmon knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

84. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

## JURY DEMAND

85. Harmon demands a trial by jury

## PRAYER

86. WHEREFORE, Harmon prays for judgment against XTO as follows:

    a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b.    For an Order pursuant to Section 16(b) of the FLSA finding XTO liable for unpaid back wages due to Harmon and the Day Rate Construction Managers for liquidated damages equal in amount to their unpaid compensation;

    c.    For an Order awarding Harmon and the Day Rate Construction Managers their reasonable attorneys' fees and expenses as provided by the FLSA;

d.  For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

e.  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
   **Michael A. Josephson**
   State Bar No. 24014780
   **Andrew W. Dunlap**
   State Bar No. 24078444
   **Carl A. Fitz**
   State Bar No. 24105863
   **JOSEPHSON DUNLAP LLP**
   11 Greenway Plaza, Suite 3050
   Houston, Texas 77046
   713-352-1100 – Telephone
   713-352-3300 – Facsimile
   mjosephson@mybackwages.com
   adunlap@mybackwages.com
   cfitz@mybackwages.com

   **AND**

   **Richard J. (Rex) Burch**
   Texas Bar No. 24001807
   **BRUCKNER BURCH PLLC**
   11 Greenway Plaza, Suite 3025
   Houston, Texas 77046
   713-877-8788 – Telephone
   713-877-8065 – Facsimile
   rburch@brucknerburch.com

   **ATTORNEYS IN CHARGE FOR PLAINTIFF**